UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____
                                                         )
MANHATTAN STEAMBOAT COMPANY,   )
LLC and DORIT ZEEVI-FARRINGTON,     )
on behalf of themselves and all others         )
similarly situated,                                        )
                                                         )
      Plaintiffs,                                 )
                                                         )
v.                                                        )    13cv5580(GBD)
                                                         )
AMERICAN EXPRESS COMPANY,             )    **OPPOSITION TO MOTION TO**
AMERICAN EXPRESS TRAVEL RELATED )    **DISMISS, TRANSFER, OR STAY**
SERVICES, INC., and AMERICAN            )
EXPRESS BANK, F.S.B.,                          )
                                                         )
      Defendants.                               )
_____)

      Defendants' motion is premised on the faulty contention that this case is "essentially identical" to two other putative class actions (the Meeks and Seldes cases) pending against a different American Express-related entity in the United States District Courts for the Northern District of Georgia and Southern District of Florida. See Meeks, *et al.* v. American Express Centurion Bank, Inc., No. 1:10-cv-03336 (N.D. Ga. filed Sept. 9, 2010); Seldes v. American Express Centurion Bank, Inc., No. 1:13-cv-22052 (S.D. Fla. filed June 6, 2013). However, the motion glosses over fundamental distinctions between those cases and this case that are fatal to Defendants' arguments. Significantly, there is absolutely no overlap between the proposed classes in Meeks and Seldes and that which is at issue in this case. Indeed, the class in this case only includes customers who had American Express small business accounts and does not include customers who had consumer accounts. The classes in Meeks and Seldes, on the other hand, only include individuals with consumer accounts.

Another important distinction between the cases is that the claims in the cases are based upon completely different customer agreements, one for small business accounts (at issue in this case) and a different one for consumer accounts (at issue in Meeks and Seldes), each containing different terms and conditions.

The defendants also are different. Meeks and Seldes are brought against only one defendant – American Express Centurion Bank ("AECB") – which is not a defendant here and has no role in this case. The three Defendants in this case (American Express Company, American Express Travel Related Services, and American Express Bank) are not named as defendants in the Meeks and Seldes cases, meaning that there is no overlap in the defendants.

These fundamental differences between this case and Meeks and Seldes preclude applying the "first filed rule" here. Further, because the litigation is not duplicative, there are no legitimate grounds for the Court to stay this case. As a result, the Court should deny Defendants' Motion to Dismiss, Transfer, or Stay (Dkt. No. 10) in its entirety.

## BACKGROUND

**A. Plaintiffs Manhattan Steamboat Company, LLC and Dorit Zeevi-Farrington Only Assert Claims for Small Business Customers.**

Manhattan Steamboat Company, LLC ("Manhattan Steamboat") is a New York limited liability company with its headquarters in New York City. See Complaint, ¶ 1 (Dkt. No. 1). Since June 2004, Manhattan Steamboat has held an American Express branded "Blue for Business" credit card. Id. Plaintiff Dorit Zeevi-Farrington ("Ms. Zeevi-Farrington") is a citizen of the State of New York and the President of Manhattan Steamboat. Id. at ¶ 2. Ms. Zeevi-

Farrington has provided a personal guarantee on Manhattan Steamboat's business credit card account throughout the life of the account.[1]  Id.

In June 2004 when Manhattan Steamboat opened its small business credit card account, the card possessed a fixed interest rate of 7.99 percent.  Id. at ¶ 26.  In early 2009, however, American Express unilaterally increased the fixed interest rate to 9.99 percent.  Id. at ¶ 28.  In early 2010, American Express unilaterally converted Manhattan Steamboat's account from a fixed rate account to a fixed-variable rate equivalent to the Prime Rate plus 9.99 percent, resulting in an effective rate of 13.24 percent.  Id. at ¶ 29.

At all times, Manhattan Steamboat's American Express Blue for Business account was in good standing.  Id. at ¶ 26.  Specifically, Plaintiffs always paid in accordance with the terms of the parties' Credit Card Agreement ("Agreement").  Id.; also Business Card Agreement (Exh. A hereto).  Nevertheless, despite the terms of the Agreement and American Express' promises, Defendants improperly increased the interest rates applicable to the account.  Id. at ¶¶ 28-29.

Plaintiffs filed this action both individually and on behalf of all American Express *small business* account holders who incurred increases to their annual percentage rates.  Id. at ¶ 33.

**B.  The Meeks Action Is Only For Individual Consumers and Is Administratively Closed.**

In the Fall of 2010, several individuals filed a putative class action against American Express Centurion Bank ("AECB") in the Superior Court of Fulton County, Georgia, attacking its increase of the interest rates applicable to their *consumer* credit card accounts.[2]  See Meeks Amended Complaint, ¶¶ 6-7, 10, 12, 20, 83, 88, 97, 103-105, 120-127, 120, 136-137 (very

---

[1] Notably, Manhattan Steamboat's Blue for Business credit card account is ***not*** subject to an arbitration clause.  See Complaint, ¶¶ 42-43 (noting that Plaintiffs timely opted out of the arbitration requirement).

[2] AECB is not a party to this case.

clearly attacking AECB's policies as they apply to consumers) (Dkt. No. 11-2).[3] After removing the case to the United States District Court for the Northern District of Georgia (Dkt. No. 11-1), AECB moved to compel arbitration of the plaintiffs' claims, citing the arbitration clause in its consumer credit card agreement. See Meeks Arbitration Motion (Dkt. No. 11-3); also Consumer Cardmember Agreement (Meeks Dkt. No. 10-2) (Exh. B hereto). The Meeks plaintiffs opposed on three grounds, including that the court should defer ruling until the conclusion of a bench trial of Ross v. American Express Company, No. 1:04-cv-05723-WHP (S.D.N.Y.), a multi-district litigation proceeding alleging that American Express conspired with its so-called competitors to impose arbitration clauses in consumer cardholder agreements. See Meeks Response to Arbitration Motion (Dkt. No. 11-4).

On January 20, 2012, the Meeks court entered an order administratively closing the action pending further developments in Ross. See Meeks Arbitration Order (Dkt. No. 11-5). Although the Ross bench trial was concluded in February 2013, the Ross court has yet to enter its findings and thus the Meeks action remains indefinitely stayed and administratively closed.

Most notably, for purposes of the motion at hand, the Meeks Plaintiffs are all individuals with consumer card accounts. They could not, and do not purport to, represent small business card holders.

## C. The Seldes Action Is Only for Individual Consumers.

In June 2013, Plaintiff Johanna Seldes, a Florida citizen, filed her own putative class action against AECB in the United States District Court for the Southern District of Florida challenging its unilateral increase and modification of the interest rates applicable to her *consumer* account. See Seldes Complaint, ¶¶ 3-4, 9, 11, 19, 41-42, 55, 67-69 (very clearly

---

[3] The Meeks filings referenced herein have been attached to Defendant's Request for Judicial Notice (Dkt. No. 11).

4

attacking AECB's policies as they apply to consumers) (Dkt. No. 11-7)[4]; Consumer Cardmember Agreement. Unlike the plaintiffs in Meeks, however, Mrs. Seldes is indisputably *not* subject to an arbitration agreement (id. at ¶ 42) and thus her claims were not bogged down in arbitration-related issues and could proceed on their merits.

Soon after Seldes was filed, the court set a May 2014 trial date and entered a scheduling order. See Seldes Order Setting Calendar Call and Trial Date (Seldes Dkt. No. 4) (Exh. C hereto); Seldes Scheduling Order (Seldes Dkt. No. 21) (Exh. D hereto). Discovery has commenced. See Seldes Scheduling Order.

In order to delay analysis of the business practices at issue, AECB moved to have Seldes dismissed, stayed, or transferred to the Northern District of Georgia for consolidation with the stayed Meeks case. See Seldes Motion to Dismiss, Transfer, or Stay (Dkt. No. 11-8). Mrs. Seldes opposed that motion, which is currently pending before District Judge James Cohn.

AECB separately moved to stay discovery pending resolution of its motion to dismiss, transfer, or stay. See Seldes Motion for Stay (Dkt. No. 11-8). Judge Cohn denied this motion the day after it was filed. See Seldes Paperless Order Denying Motion to Stay Discovery (Seldes Dkt. No. 31) (Exh. E hereto).

The Seldes action does not assert claims on behalf of the customers or accounts at issue in this case. As is repeatedly made clear by Mrs. Seldes in her complaint, she seeks to represent a class of consumers, not businesses.

---

[4] Except as noted, the Seldes filings referenced herein have been attached to Defendant's Request for Judicial Notice (Dkt. No. 11).

5

## ARGUMENT AND CITATION OF AUTHORITY

**A.     The First Filed Rule Does Not Apply to this Case.**

Defendants contend that this case should be dismissed, stayed, or transferred to the Northern District of Georgia for consolidation with the stayed Meeks case based on the "first filed rule." See Motion, pp. 5-10. The first filed rule states that "'[w]here there are two competing lawsuits, the first suit should have priority.'" New York Marine and General Ins. Co. v. Lafarge N. Am., Inc., 599 F.3d 102, 112-13 (2d Cir. 2010) (quoting D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 106 (2d Cir. 2006)). This flexible rule of equity "'embodies considerations of judicial administration and conservation of resources' by avoiding duplicative litigation and honoring the plaintiff's choice of forum." Employers Ins. of Wausau v. Fox Entertainment Group, Inc., 522 F.3d 271, 274-76 (2d Cir. 2008) (quoting First City Nat'l Bank & Trust Co. v. Simmons, 878 F.2d 76, 79 (2d Cir. 1989)). However, the first filed rule does not apply here because this case does not "substantially overlap" with the administratively closed Meeks case.

   1.     This Action Does Not "Substantially Overlap" with Meeks.

The first filed rule only applies where "'in fact the suits are duplicative.'" American Steamship Owners Mut. Protection and Indem. Ass'n, Inc. v. Lafarge N., 474 F. Supp. 2d 474, 481 (S.D.N.Y. 2007) (citation omitted). This principle requires a "substantial overlap" between the cases, in that they have "'identical or substantially similar parties and claims.'" Id.; also Curtis v. Citibank, N.A., 226 F.3d 133, 138 (2d Cir. 2000) (holding that the court must carefully consider whether the suits are, in fact, duplicative, and must "not to be swayed by a rough resemblance between the two suits"); Quinn v. Walgreen Co., ___ F. Supp. 2d ___, 2013 WL 4007568, *4 (S.D.N.Y. Aug. 7, 2013) ("because this case presents neither identical issues nor

identical parties as the [other] action, the Court finds the first filed rule does not apply"); Bukhari v. Deloitte & Touche LLP, 2012 WL 5904815, *3-4 (S.D.N.Y. Nov. 26, 2012) ("[t]he classic context for applying the rule is where mirror-image lawsuits between the same parties are filed in different venues").

It is undisputed that the Plaintiffs (Manhattan Steamboat and Ms. Deevi-Farrington) and the plaintiffs in Meeks (Christopher Meeks, Jeanne Wong, Belinda Smith, and Christopher Russell) are different. Compare Complaint with Meeks Amended Complaint. Likewise, it is undisputed that the Defendants in this case (American Express Company, American Express Travel Related Services, and American Express Bank) and the Defendant in Meeks (AECB) are different. Compare Complaint with Meeks Amended Complaint. There simply is no overlap between the parties.

Defendants attempt to sidestep the complete lack of uniformity among the parties by arguing that (i) the putative class in this case is subsumed by the putative class in Meeks and (ii) the issues raised by the two cases are the same. See Motion, pp. 6-7. Defendants are wrong on both counts.

First, the putative class in this case (i.e., small business accountholders) is mutually exclusive to the putative class in Meeks (i.e., consumer accountholders). Compare Complaint, ¶¶ 2-4, 10-15, 21, 26-33, 42-43 (case filed by small business and its president-guarantor attacking Defendants' policies as they apply to small business customers and indicating that the putative class consists of small business customers) with Meeks Amended Complaint ¶¶ 6-7, 10, 12, 20, 83, 88, 97, 103-105, 120-127, 120, 136-137 (case filed by consumers attacking AECB's practices as they relate to consumers). Defendants' argument to the contrary ignores the plain

7

language of the operative complaints, which clearly distinguish between the two separate groups of plaintiffs/class members.

The few cases that have considered the "first filed rule" in the class context have concluded that if the classes are not *identical*, the rule does not apply. For example, in Quinn v. Walgreen Co., this Court considered a situation involving a case that sought certification of a multi-state class of consumers and a subsequently-filed action asserting similar claims that sought certification of New York and Connecticut classes. The Court found that the first filed rule did not apply, holding:

> [a]lthough the [earlier filed] action also seeks certification of a multi-state class that could potentially encompass New York and Connecticut consumers, no nationwide class has, in fact, been certified in [the earlier filed suit]. Therefore, neither the parties nor the issues in this case are identical to those in [the subsequent suit].

Quinn, 2013 WL 4007568 at *4; also Bukhari, 2012 WL 5904815 at *3-4 ("because the plaintiff classes have no overlap . . . Deloitte is incorrect to suggest that [the first filed action] and this case are 'essentially the same lawsuit involving the same parties and the same issues'") (citation omitted).

This rationale applies here given that the proposed putative class of small business accountholders in this action is different from the proposed putative class of consumer accountholders in Meeks. There is no overlap in the classes. Similarly, there is no overlap in the defendants and the underlying account agreements that are at issue in the cases are significantly different.

That the classes are completely different is highlighted by the fact that the accounts of small business and consumer customers are governed by different contracts. Compare Business Card Agreement with Consumer Cardmember Agreement. A quick review of these two contracts reveals that they contain very different terms and conditions. Given that the majority

of the claims of the plaintiffs in both cases are founded on the language of these divergent contracts, the factual issues in the two cases will obviously differ. Thus, not only do the plaintiffs, defendants, and classes in this case and Meeks lack uniformity, but so do the underlying factual issues. E.g., Crewe v. Rich Dad Educ., LLC, 884 F. Supp. 2d 60, 87-88 (S.D.N.Y. 2012) (holding that first filed rule does not apply to two suits that arise out of different contracts). The first filed rule does not apply here.

  2. <u>Invoking the First Filed Rule in this Case Is Not Warranted.</u>

Even if the first filed rule applied here, it "'is not to be applied in a rigid or mechanical way.'" Erickson Beamon Ltd. v. CMG Worldwide, Inc., 2013 WL 5355010, *2-3 (S.D.N.Y. Sept. 25, 2013) (quoting Dornoch Ltd. v. PBM Holdings, Inc., 666 F. Supp. 2d 366, 369 (S.D.N.Y. 2009)); Employers Ins. of Wausau, 522 F.3d at 275 ("the first-filed rule does not constitute an invariable mandate"); Quinn, 2013 WL 4007568 at *3. Rather, because "[t]he complex problems that can arise from multiple federal filings do not lend themselves to a rigid test," the district court is instead required to "consider the equities of the situation when exercising its discretion." Curtis, 226 F.3d at 138; also Naula v. Rite Aid of N.Y., 2010 WL 2399364, *3 (S.D.N.Y. Mar. 23, 2013). For example, the rule need not be applied where there is a "showing of balance of convenience or special circumstances giving priority to the second [case]." D.H. Blair, 462 F.3d at 106.

First, a well recognized "special circumstance" that warrants giving priority to the second suit includes a situation, like here, where there is a lack of progress in the prior litigation. E.g., American Steamship, 474 F. Supp. 2d at 481; In Matter of Arbitration Between Griffin Industries, Inc., 58 F. Supp. 2d 212, 218 (S.D.N.Y. 1999); Riviera Trading Corp. v. Oakley, Inc., 944 F. Supp. 1150, 1158 (S.D.N.Y. 1996); Pippins v. KPMG LLP, 2011 WL 1143010, *4

9

(S.D.N.Y. Mar. 21, 2011) ("application of the first-filed rule is diminished where there has been little progress in the first filed action"); Williams v. City of N.Y., 2006 WL 399456, *4 (S.D.N.Y. Feb. 21, 2006). Here, the Meeks case, despite being filed several years ago, has not substantively advanced based on the arbitration issue (that does not apply here). See Complaint, ¶ 42 (Manhattan Steamboat's small business account was timely opted-out of the American Express' arbitration requirement). The Meeks court has not even considered the legal sufficiency of the plaintiffs' claims, let alone their substantive merit. Indeed, Meeks is administratively closed pending a decision in the Ross matter. See Meeks Order. Even if in the next few months the Ross court issues its trial ruling and the Meeks court thereafter quickly rules on American Express' motion to compel arbitration as to the Meeks Plaintiffs, these decisions will assuredly be followed by appeals and stays, meaning that there will be at least another year to two years of delay before litigation on the merits can begin in Meeks. E.g., 9 U.S.C. § 16(a)(1). As such, litigation in this case will be well underway before litigation on the merits in Meeks is even likely to begin. Because of these special circumstances, there is no legitimate, equitable reason to force Plaintiffs to wait to litigate their claims for years while the inapposite Meeks arbitration issues are resolved. Rigid adherence to the first filed rule is not warranted and would be unfair to Plaintiffs here. See Pippins, 2011 WL 1143010 at *4 (refusing to enforce first filed rule when the earlier filed case had made no substantive progress and was stayed).

Second, the "balance of convenience" exception also applies. The "factors relevant to the balance of convenience analysis are essentially the same as those considered in connection with motions to transfer venue pursuant to 28 U.S.C. § 1404(a)[,]" including the plaintiff's choice of forum, the convenience of parties, the locus of operative facts, the relative means of the parties,

10

and the interests of justice. Employers Ins. of Wausau, 522 F.3d at 275. "A balance of these factors will identify the more appropriate forum." Id.

These factors all militate in favor of this action remaining in this Court. First, there is a strong presumption that Plaintiffs' choice of forum is entitled to deference. E.g., Fellus v. Sterne, Agee & Leach, Inc., 783 F. Supp. 2d 612, 619 (S.D.N.Y. 2011) (holding that a plaintiff's choice of forum will not be disturbed "unless the balance of the factors weighs strongly in favor of transfer). This is especially true given the Southern District of New York is Plaintiffs' home forum.[5] Id. ("[d]eference to a plaintiff's choice of forum is strongest when the plaintiff sues in his home forum") (citing Pollux Holding, Ltd. v. Chase Manhattan Bank, 329 F.3d 64, 71 (2d Cir. 2003)); also Complaint, ¶¶ 3-4.[6]

Additionally, given that Plaintiffs and at least one of the Defendants are based in this District, the locus of operative facts (i.e., entering into the contract, using the card, receiving statements and changes to the contract, etc.) occurred in this District, it would be a bigger burden for Plaintiffs (i.e., a small business and its principal) to travel to Georgia for litigation than it is for Defendants (i.e., huge corporations) to litigate in this District (where they all do substantial business), and justice would not be served if Plaintiffs were forced to wait to litigate their claims until the inapposite arbitration issues in Meeks are resolved, the "balance of convenience" inquiry squarely tips in favor of this Court retaining the case.

---

[5] Given that this case was filed in Plaintiffs' home district and the home district for at least one of the three Defendants, Plaintiffs are puzzled by Defendants' allegations of "forum shopping." See Motion, pp. 1, 9; also Gass v. Marriott Hotel Servs., Inc., 558 F.3d 419, 425 (6th Cir. 2009) ("there is no forum shopping concern when the forum is also the plaintiff's state of citizenship").

[6] Contrary to Defendants' assertions, deference is still due even though this case is a putative class action. DiRienzo v. Philip Servs. Corp., 294 F.3d 21, 28 (2d Cir. 2002) (that plaintiffs sought to represent others "does not mean they are deprived of all deference in their choice of forum").

## B. A Stay Would Not Be Appropriate.

Defendants next argue that even if the first filed rule does not apply, the Court should nonetheless exercise its inherent discretion to stay this case pending disposition of Meeks. See Motion, pp. 10-12; but also Aerotel, Ltd. v. IDT Corp., 486 F. Supp. 2d 277, 283 (S.D.N.Y 2007) (court's discretion to stay case pending resolution of related foreign proceeding is "not boundless, but is limited by its 'heavy obligation to exercise jurisdiction' on the one hand, and the need for 'wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation' on the other") (citation omitted).

Defendants assert that if this case proceeds they will be subject to duplicative discovery, motion practice, and pre-trial case management, which will in turn increase the risk of inconsistent rulings and waste the resources of this Court. Id. However, given the unique procedural posture of the two cases, these fears will never be realized.

Although American Express insinuates to the contrary, this is not a situation where competing class actions are being simultaneously litigated in two separate courts. The Meeks case, which involves different parties, different putative classes, and different contracts from this case, is bogged down on an arbitration issue and is stayed indefinitely and administratively closed. This action, meanwhile, is not burdened with such a jurisdictional impediment. In all probability, it will be well underway on the merits before the Meeks arbitration issue is even resolved. Indefinitely staying this case pending resolution of Meeks, a matter which is itself indefinitely stayed on grounds which are wholly irrelevant to Plaintiffs' claims, would only occasion unnecessary delay. Although American Express would undoubtedly much rather put consideration of Plaintiffs' claims in "the deep freeze," hoping that a few years of delay may sufficiently impede them, such a stay would only serve to cause prejudice, rather than avoid it.

12

Louis Vuitton Malletier S.A. v. LY USA, Inc., 676 F.3d 83, 97 (2d Cir. 2012) ("'absent a showing of undue prejudice upon defendant or interference with his constitutional rights, there is no reason why plaintiff should be delayed in its efforts to diligently proceed to sustain its claim'") (citation omitted). A stay is unwarranted and inappropriate.

## CONCLUSION

The first filed rule does not apply here because this case and Meeks (and Seldes) involve different parties, different putative classes, different contracts, as well as unique procedural circumstances. Moreover, a stay is inappropriate and would only occasion unnecessary delay of this action. Defendants' Motion should be DENIED in its entirety.

Dated: October 21, 2013         SQUITIERI & FEARON, LLP

                                By:   */s/ Stephen J. Fearon, Jr.*
                                Stephen J. Fearon, Jr.
                                32 East 57th Street, 12th Floor
                                New York, NY 10022
                                Phone: (212) 421-6492
                                Fax: (212) 421-6553

Dated: October 21, 2013         WEBB, KLASE & LEMOND, LLC

                                By:   */s/ E. Adam Webb*
                                E. Adam Webb
                                1900 The Exchange SE, Suite 480
                                Atlanta, GA 30339
                                Phone: (770) 444-0773
                                Fax: (770) 217-9950

                                Attorneys for Plaintiffs
                                   MANHATTAN STEAMBOAT COMPANY,
                                   LLC and DORIT ZEEVI-FARRINGTON

13

# **CERTIFICATE OF SERVICE**

I hereby certify that on October 21, 2013, I presented the foregoing to the Clerk of Court for filing and uploading to the CM/ECF system, which will send a notice to the counsel of record listed below:

Joseph E. Strauss, Esq.
Stroock & Stroock & Lavan LLP
180 Maiden Lane
New York, NY 10038-4982

David W. Moon, Esq.
Stroock & Stroock & Lavan LLP
2029 Century Park East
Los Angeles, CA 90067

DATED this 21st day of October, 2013.

By: */s/ E. Adam Webb*
E. Adam Webb